IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISHAWN LLOYD STUCKEY,<br><br>Defendant. | No. 24-CR-2017-CJW-MAR<br><br>**ORDER** |

_____

## I. INTRODUCTION

This matter is before the Court on a Report and Recommendation (R&R) (Doc. 39) by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending the Court deny defendant's Motion to Suppress (Doc. 16). Defendant's motion arises from a traffic stop that occurred on February 2, 2024, in Black Hawk County, Iowa.

On October 8, 2024, defendant filed a motion to suppress "all evidence derived from the search of his vehicle on February 2, 2024, including his statements to authorities, a firearm, and any other evidence obtained as a result of the stop and search." (Doc. 16). On October 11, 2024, the government filed a resistance. (Doc. 23). On October 17, 2024, defendant filed a reply. (Doc. 31). On October 22, 2024, Judge Roberts held a hearing on defendant's motion. (Doc. 34). On October 29, 2024, defendant filed a supplemental brief. (Doc. 37). On November 4, 2024, the government filed a responsive supplemental brief. (Doc. 38). Judge Roberts issued his R&R on November 15, 2024, giving the parties twenty-one days to file objections. (Docs. 39, 42, 43). On December 6, 2024, defendant filed his objections to the R&R. (Doc. 44). The government did not file any objections.

## II. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion, giving "fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 675 (1980); *see also Salve Regina College v. Russell*, 499 U.S. 225, 228 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable.").

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (alteration in original) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed:

2

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

#### A. Credibility of Lieutenant Bose

Defendant objects to Judge Roberts' finding that Waterloo Police Department Lieutenant Steven Bose ("Lt. Bose") was credible when he testified. (Doc. 44, at 1). Defendant does not provide a basis for why he believes Judge Roberts erred here; he simply states that he "respectfully disagrees." (*Id.*). In other portions of his objection, however, defendant objects to specific findings based on Lt. Bose's testimony and provides a more detailed explanation to each as to why he believes Judge Roberts erred in making a particular factual finding. (*Id.*, at 1-3).

As the Court of Appeals for the Eighth Circuit has explained,

> [O]nce a party makes a proper objection to a magistrate's finding, including a credibility finding, the district court *must* make a de novo determination of that finding. *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d [352, 356 (5th Cir. 1980)]. The court need not conduct a de novo hearing, [*Raddatz*, 447 U.S. at 673–76], but must nonetheless make a de novo determination of that finding based on the record. *Calderon*[,] 630 F.2d at 356; *see Branch v. Martin*, 886 F.2d [1043, 1045 (8th Cir. 1989)] (objections to magistrate's credibility determinations); *Cay v. Estelle*, 789 F.2d 318, 327 (5th Cir. 1986) (de novo review of full credibility assessments made by magistrate requires consideration of verbatim record of evidentiary hearing[.]).

*Taylor v. Farrier*, 910 F.2d 518, 521 (8th Cir. 1990) (emphasis in original); *see also Branch*, 886 F.2d at 1045–46 (holding district judge erred by failing to either read the transcript of evidentiary hearing or listen to tape recording thereof when party objected to magistrate judge's assessment of the credibility of witnesses).

3

The Court has reviewed the transcript of the hearing before Judge Roberts in its entirety, including the testimony of Lt. Bose. *See* (Doc. 36, at 4–89). It has also listened to the recording of Lt. Bose's testimony. The Court has also reviewed the exhibits submitted at the hearing, including the initial police report and supplemental police report authored by Lt. Bose, along with the two 911 call recordings, video recordings from the body cameras worn by Lt. Bose and Sergeant Ed Savage ("Sgt. Savage"), and video recording from the interior car camera of Lt. Bose's patrol car. *See* (Docs. 19-1; 23-2; 32-1). The Court finds nothing to render Lt. Bose's testimony at all dubious. His testimony is detailed and internally consistent, and it is also corroborated by all the exhibits offered at the hearing. Nowhere do those exhibits contradict Lt. Bose's narrative of the relevant events as he recounted them on the witness stand. So, as to a general objection to Judge Roberts finding Lt. Bose credible, the Court overrules defendant's objection.

Defendant offers two grounds to suggest that Lt. Bose was unreliable as to specific facts, both in his supplemental police report and again on the witness stand, when he recounted that during the pinch block maneuver which he and Sgt. Savage used to stop defendant's vehicle, he observed defendant exhibiting "furtive movements" inside his Dodge Durango, alerting Lt. Bose to the possibility that defendant may have accessed a weapon. First, defendant contends that Lt. Bose's body camera footage shows a significant glare on the windshield of the Durango, and "[d]ue to this glare, it is not possible to clearly view the interior of the Durango or discern whether an occupant is even in the vehicle." (Doc. 44, at 1). This observation about the body camera footage, although true, does not contradict or otherwise discredit Lt. Bose's report or testimony. For one thing, the body camera is positioned on Lt. Bose's torso, and thus does not capture what Lt. Bose could see from an eye-level angle. Moreover, a camera lens such as that of the body camera does not refract light and discern depth in the same manner

4

the human eye does. *See United States v. Carter*, Crim. No. 17-141 (PJS/BRT), 2017 WL 4621278, at *5 (D. Minn. Sept. 20, 2017) (rejecting assertion that officer did not see an air freshener because it did not appear on a video, noting the government's authority that the human eye can see what a camera cannot). Additionally, it appears from the body camera footage that the weather conditions were overcast, rather than the kind of clear skies which might produce a harsh glare of sunlight beams reflecting on glass that would prevent the human eye from seeing through a transparent car windshield. Additionally, defendant's car passed under two overpasses immediately before the officers stopped his car; the overpasses would cast a shadow that would cut glare from ambient light. Defendant's objection amounts to nothing more than speculation that glare off the window might have impaired the officer's vision; it is not proof in any way that it did. In short, the body camera footage does not impeach Lt. Bose's credibility.

Second, defendant contends that Lt. Bose's body camera footage shows that upon pulling his patrol car in front of the front-right corner of defendant's Durango during the pinch block maneuver, Lt. Bose's body was oriented toward the steering wheel of his car, which would have required Lt. Bose to "twist his head to an extreme over his left shoulder" to observe defendant's purported "furtive movements" from that vantage point. (*Id.*, at 3). This contention is similarly unavailing. Upon review of the footage, the undersigned finds that with one's body and shoulders facing forward, it is entirely possible—rather easy, even—to turn one's head and neck to the left in such a way as to replicate the same movement Lt. Bose would have had to make to view the Durango's windshield from the driver's seat of the patrol car at the angle the patrol car was facing. Again, defendant's observations based on the body camera footage do not contradict or otherwise discredit Lt. Bose's report or testimony.

In sum, upon review of the record, the Court finds Lt. Bose's testimony credible both generally and as to the specific testimony defendant challenges. Defendant's

5

objection on this ground is overruled.

### B. *Defendant's Shifting Shoulders*

Defendant explicitly objects "to the finding that Lt. Bose observed [defendant] shift his shoulders to the right and reach back towards the rear seat on the passenger's side" of the Durango, which Lt. Bose and Judge Roberts described as "furtive movements." (Doc. 44); *see also* (Doc. 39, at 4, 19, 21). Defendant's grounds for this objection are the same as the objection above to Lt. Bose's credibility: the body camera footage shows a glare on the windshield of the Durango, and Lt. Bose would have had to twist his head to the left to observe the front of the Durango from his patrol car. For the same reasons, the Court likewise overrules defendant's objection here. The body camera footage does not capture the view Lt. Bose had during the pinch block maneuver, and it was entirely possible for Lt. Bose to view defendant through the Durango's windshield from that angle. Defendant's objection on this ground is overruled.

### C. *Lt. Bose's Search of the Durango*

Defendant's remaining objections relate to Lt. Bose's search of defendant's vehicle. The Court will address them in turn.

#### 1. *Opening the Front Passenger Door*

First, defendant objects to Judge Roberts' reliance on Lt. Bose's testimony that when he first opened the front passenger door of the Durango, he did not visually search the interior of the vehicle for weapons or contraband because he was focused solely on defendant, particularly defendant's hands. S*ee* (Doc. 36, at 20–21, 69–70); (Doc. 39, at 5). Defendant argues that "[i]t is logical that if an officer was concerned for safety and suspected weapons in the vehicle, that officer would visually search the reachable area of the vehicle for weapons, potentially dangerous objects, or contraband," and "Lt. Bose opened the door and had time to visually scan the interior of the vehicle for weapons." (Doc. 44, at 2). The implication of defendant's argument is that Lt. Bose in fact *did* scan

6

the entire vehicle during this time, saw no evidence of weapons or contraband, and thus had no basis to search the vehicle after defendant was subsequently arrested and placed in Lt. Bose's patrol car.

Review of the body camera footage coupled with the relevant law and common sense renders this argument meritless. The body camera worn by Lt. Bose shows that Lt. Bose opened the front passenger door of the Durango while defendant was still seated, and defendant then got up and exited the vehicle near Sgt. Savage, who was near the front driver's side door. Lt. Bose then began walking around the front of the Durango toward defendant and Sgt. Savage. All this took place in a span of about three seconds. As will be explained, based on the totality of the circumstances, at the time Lt. Bose opened the front passenger door of the Durango (and when he returned to search the vehicle after defendant was arrested), Lt. Bose had a sufficient legal basis to search defendant's vehicle under both the automobile exception and the search incident to lawful arrest exception to the warrant requirement. When Lt. Bose opened of the front passenger door of the Durango, it did not extinguish these bases, nor could it. In that brief three seconds, Lt. Bose did not, for example, search the center console or under or behind the seats for contraband, even though he would have been entitled to do so at that time, and thus he remained entitled to do so when he returned to conduct the search. The Court finds it reasonable to believe that Lt. Bose was indeed focused solely on defendant's person, particularly defendant's hands, during those three seconds and not anywhere else. Regardless, though, whatever Lt. Bose may have observed in plain view during that time, it did not preclude him from later returning to search those areas of the car which were not searched during that initial encounter—such as the center console, or indeed underneath the towel on the rear passenger seat where he discovered the firearm at issue.

This leads to defendant's closely related respective objections to Judge Roberts' finding that Lt. Bose's search of defendant's vehicle was justified under both the

7

automobile exception and the search incident to lawful arrest exception to the warrant requirement. (Doc. 44, at 2–3).

### 2. Automobile Exception

"The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Kennedy*, 427 F.3d 1136, 1140–41 (2005); *see also United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (Although a warrantless search usually constitutes a *per se* Fourth Amendment violation, the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so."); *United States v. Schackleford*, 830 F.3d 751, 753 (8th Cir. 2016) ("Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband."). The Court of Appeals for the Eighth Circuit has articulated the probable cause standard under the automobile exception as follows:

> "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000). "[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam).

8

*United States v. Wells*, 347 F.3d 280, 287–88 (8th Cir. 2003) (alterations in original).

Defendant contends that Lt. Bose did not have probable cause to believe the Durango contained contraband or other evidence of a crime during the traffic stop. (Doc. 44, at 2). The Court disagrees. There is ample evidence to support Lt. Bose's belief that the Durango would contain evidence relating to defendant's possible intoxication and violations of Iowa's operating-while-intoxicated ("OWI") statute, Iowa Code § 321J.2, or Iowa's open-container statute, Iowa Code § 321.284.

Lt. Bose was advised by the law enforcement dispatcher that a disorderly and intoxicated male was causing problems at a nearby Walmart store and that this individual was observed leaving Walmart headed toward a dark Dodge Durango with Dan Deery license plates. Lt. Bose drove to the area and observed a vehicle matching that description exit the parking lot, turn erratically at a high rate of speed, hit the median curb, and drive toward the highway. Following the Durango, Lt. Bose observed the vehicle swerve within its lane and straddle the center white dotted line twice before Lt. Bose initiated the traffic stop. Lt. Bose turned on his emergency lights and siren to initiate the stop, but the Durango did not immediately pull over and instead traveled to an on-ramp near the highway, where he stopped behind traffic at a stoplight. Lt. Bose and Sgt. Savage, who had also arrived on scene in another patrol car, initiated a "pinch block" maneuver by which Lt. Bose pulled his patrol car in front of the front-right corner of the Durango, and Sgt. Savage pulled his patrol car behind the Durango. Defendant, who was driving, reversed the Durango and collided with Sgt. Savage's patrol vehicle. After defendant exited the Durango, Lt. Bose and Sgt. Savage took him into custody, and Lt. Bose—who was facing defendant as defendant was being handcuffed—testified that he smelled the odor of alcohol coming from defendant, and that defendant's eyes were glassy, watery, and slightly bloodshot.

9

The Court finds all these facts, taken together, would lead a reasonable officer to believe there is a fair probability that evidence of a crime—namely, OWI or, interchangeably, driving with an open container—would be found in defendant's vehicle. Lt. Bose's search of defendant's vehicle was therefore justified under the automobile exception to the warrant requirement.[1] *Cf. United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (finding probable cause to search defendant's vehicle for open container). Defendant's objection on this ground is overruled.

### 3. *Search Incident to Lawful Arrest Exception*

"Under the search incident to arrest exception, officers may search a car incident to arrest and without a warrant if 'it is reasonable to believe the vehicle contains evidence of the offense of arrest.'" *United States v. Slim*, 34 F.4th 642, 647 (8th Cir. 2022) (quoting *United States v. Stegall*, 850 F.3d 981, 984 (8th Cir. 2017), in turn quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009)). "[O]fficers may conduct a warrantless search of a vehicle incident to arrest—even after the arrestee is restrained in the back of a patrol vehicle—when officers have a reasonable basis to believe the vehicle contains evidence related to the crime of arrest." *Stegall*, 850 F.3d at 984; *see also United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) ("Even after an arrestee has been secured in the back of a police car, officers may search the vehicle incident to an arrest if their observations provide a reasonable basis to conclude that evidence of the crime of arrest might be found in the vehicle.") (internal quotation marks omitted).

Defendant contends Lt. Bose did not have a reasonable basis to believe that evidence relevant to defendant's intoxication would be found in the vehicle incident to

---

[1] As explained above, this exception entitled Lt. Bose to search "every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825. Thus, regardless of whatever Lt. Bose could have and may have seen during the brief three-second window after he opened the front passenger door of the Durango, he remained entitled to search the entire vehicle for evidence of alcohol, including under the towel on the rear passenger side seat where he discovered the firearm.

his arrest. (Doc. 44). Defendant was arrested for OWI in violation of Iowa Code Section 321J.2(2)(b). The Court finds that the same combination of facts set forth above which gave Lt. Bose probable cause to believe there was a fair probability that evidence of OWI would be in defendant's vehicle also gave Lt. Bose a "reasonable basis" to believe the vehicle contained that same evidence. To recount them again, those facts include the police dispatcher's report of an intoxicated man entering the same vehicle which Lt. Bose then observed turning erratically at a high rate of speed, hitting a curb, swerving, and crossing the center white dotted line twice; defendant failing to immediately stop for police emergency lights and siren, and then reversing and colliding into Sgt. Savage's patrol car when the officers initiated the pinch block maneuver; and Lt. Bose's impressions of defendant smelling of alcohol and having glassy, watery, and slightly bloodshot eyes consistent with intoxication immediately after exiting his vehicle. Lt. Bose's search of defendant's vehicle was therefore justified under the search incident to lawful arrest exception to the warrant requirement. Defendant's objection on this ground is overruled.

## IV. CONCLUSION

Upon conducting a de novo review of the portions of Judge Roberts' R&R to which defendant objected, and a review of the remainder of the R&R for clear error, the Court **overrules** defendant's objections and **adopts** the R&R. Defendant's Motion to Suppress (Doc. 16) is **denied**.

**IT IS SO ORDERED** this 6th day of January, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa